# IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

CAROLYN URGENT,          )
                              )
                              )
              Plaintiffs,      )        CIVIL NO. 2006/0105
v.                          )
                              )
                              )
                              )
HOVENSA, LLC,          )
                              )
                              )
              Defendant.     )
                              )
_____ )

## MEMORANDUM OPINION

FINCH, J.

THIS MATTER comes before the Court on a Motion to Dismiss filed by Defendant, Hovensa, LLC.  Plaintiff opposes such Motion.  After careful consideration and upon review of the briefs submitted by the parties, the Court issues the following ruling.

## I.      FACTUAL & PROCEDURAL BACKGROUND

Plaintiff has filed this action against Defendants alleging the following counts: (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, (3) intentional infliction of emotional distress, (4) negligent infliction of emotional distress, (5) violation of the first amendment right to freedom of speech, (6) violation of the sixth amendment right to a jury trial (7) wrongful discharge and (8) punitive damages.[1]

---

[1] The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1367(a), and 1391(b).

Plaintiff was a member of the Local Union 8526 of the United Steelworkers of America, AFL/CIO-CLC ("Union"), which negotiated a collective bargaining agreement ("CBA") on her behalf. Plaintiff's employment with Defendant was governed by the terms and conditions of the CBA between Defendant and the Union. Defendant hired Plaintiff on September 12, 2005 as a Process Operator. Complaint ¶ 5. During the course of her employment, Plaintiff informed her supervisor, James McCellan, that she was a defendant in a criminal case before the U.S. District Court of the Virgin Islands, Division of St. Croix. Complaint ¶ 7. On January 24, 2006, Plaintiff took a personal business leave day for a court appearance and Defendant granted the leave. Complaint ¶ 8. Thereafter, Plaintiff completed a Hovensa Personal Business Absence Authorization Form requesting leave for the two-week period of January 27, 2006 through February 10, 2006 so that she could attend court appearances and prepare for the trial of her criminal case. Complaint ¶ 10. On January 26, 2006, Hovensa's management approved the above mentioned absence. Complaint ¶ 11.

Plaintiff was informed that a motion hearing was ordered for January 27, 2006 and that jury selection and trial of her case was ordered to commence on January 30, 2006. Complaint ¶ 12. When she was advised that her trial was estimated to proceed for two weeks and would likely continue past the date she was expected to return to work, Plaintiff telephoned her supervisor on January 30, 2006 to inform him of the same and to request additional time off work. Complaint ¶¶ 13-14. On February 6, 2006, McCelan notified Plaintiff that her request was denied and he instructed her to report to work on Monday, February 13, 2006 or be subject to unauthorized absence. Complaint ¶ 15. Thereafter, a correspondence was delivered to the security guard on duty at Defendant's main lobby advising that Plaintiff was currently standing

trial and that she was scheduled to appear for trial the week of February 13, 2006.  Complaint ¶ 20.

On February 15, 2006, Plaintiff received a voicemail from McCellan instructing her to report to work on February 16, 2006.  Complaint ¶ 26.  Upon receiving said voicemail, Plaintiff attempted to contact McCellan to further advise him that she could not return to work on February 16, 2006 because she was currently standing trial and her appearance in court was mandatory.  Complaint ¶ 27.  Plaintiff was unsuccessful in her attempts to contact McCellan. Complaint ¶ 28.

On February 17, 2006, Defendant suspended Plaintiff pending further investigation and she was directed to report to Hovensa's Human Resources office on February 22, 2006, at which time she was instructed to report to work on February 24, 2006.  Complaint ¶¶ 33-36.  On February 24, 2006, Defendant notified Plaintiff by way of correspondence that she was terminated for unauthorized absences from work.  Following Plaintiff's termination, she filed a grievance with the Union.  Complaint ¶ 38.  In a letter dated April 27, 2006, Gerard Jackson, President of the Labor Union, notified Plaintiff that the grievance procedures of its contract did not apply to her as a probationary employee.  Complaint ¶ 49.  On March 3, 2006, Plaintiff filed a wrongful discharge claim with the Department of Labor, but her claim was dismissed because she was employed for less than one hundred eighty days, thereby barring her from the grievance procedure contained in the CBA.  Complaint ¶ 51.  Plaintiff filed her Complaint in the District Court on August 3, 2006.  Defendant filed a Motion to Dismiss on August 31, 2006, arguing that the Court lacks subject matter jurisdiction over this action.

## II.      STANDARD OF REVIEW

Defendant filed the Motion to Dismiss Plaintiff's claims for lack of jurisdiction over the subject matter pursuant to Federal Rule of Civil Procedure 12(b)(1).  The objection presented by such a motion is that the court has no authority to hear and decide the case.  In its brief in support of the Motion to Dismiss, Defendant argues that dismissal of this case is required because Plaintiff's claims are preempted by Section 301 of the Labor Management Relations Act ("LMRA").  See Def.'s Memo. in Supp. of Motion to Dismiss at 2 (Docket No. 4).  Rather than stripping the Court of subject matter jurisdiction, the LMRA provides federal jurisdiction over "suits for violation of contracts between an employer and a labor organization." 29 U.S.C. § 185(a).  Defendant's argument that the Court lacks subject matter jurisdiction over this case because Plaintiff's claims are preempted by Section 301, which, in fact, establishes federal jurisdiction is not well founded.  A motion under Rule 12(b)(1) should not be confused with a motion under Rule 12(b)(6)[2] to dismiss for failure to state a claim for relief under federal law. JM Mechanical Corp. v. United States, 716 F.2d 190, 197 (3d Cir. 1983); see Johnsrud v. Carter, 620 F.2d 29, 32-3 (3d Cir. 1980).  The Court will treat Defendant's Rule 12(b)(1) motion, in the alternative, as a motion for dismissal pursuant to Rule 12(b)(6).

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), this Court must accept as true all of the factual allegations in the complaint as well as the reasonable inferences that can be drawn from them.  Moore v. Tartler, 986 F.2d 682, 685 (3d Cir. 1993); see Weston v. Commonwealth of Pennsylvania, 251 F.3d 420, 429-430 (3d Cir. 2001).  The Court may dismiss the complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984);

---

[2] The merits of a claim may be tested at the pleading stage by a motion to dismiss for a failure to state a claim under Rule 12(b)(6).

Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Quinones v. United States, 492 F.2d 1269, 1273 (3d Cir. 1974) ("[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief").

As a general rule, the Court may only consider the pleadings which are attacked by a Rule 12(b)(6) motion in determining its sufficiency. The Court is not permitted to look at matters outside the record.  See Gov't Guarantee Fund v. Hyatt Corp., 166 F.R.D. 321, 325 (D.V.I. 1996); see also Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) ("When a federal court reviews the sufficiency of a complaint before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one.  The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims").  Pryor v. Ncaa, 288 F.3d 548, 560 (3d Cir. 2002).  However, the Court may consider documents which are attached to or submitted with Plaintiff's Complaint, as well as legal arguments presented in memorandums or briefs and arguments of counsel.  Id.  Further, documents whose contents are alleged in the Complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered.  Id.; see Kulwicki v. Dawson, 969 F.2d 1454, 1462 (3d Cir. 1992); Callender v. Nichtern, 32 V.I. 96, 106 (V.I. Terr. Ct. 1995).  Documents that Defendant attaches to the Motion to Dismiss are considered part of the pleadings if they are referred to in Plaintiff's Complaint and are central to the claim; as such, they may be considered by the Court.  Pryor v. Ncaa, 288 F.3d at 560.

## III.   DISCUSSION

In considering Defendant's Motion to Dismiss, the Court must analyze whether the instant case falls within the scope of Section 301 of the LMRA.  Section 301(a) of the LMRA[3] provides federal jurisdiction over breach of contract actions between an employer and a labor organization.  29 U.S.C. § 185(a).  Courts have made clear that federal substantive law governs actions for enforcement of collective bargaining agreements.  Henderson v. Merck & Co., 998 F. Supp. 532, 537 (E.D. Pa. 1998); see Milione v. Hahnemann Univ., 1990 WL 73039 at *2 (E.D. Pa. May 29, 1990).  Therefore, questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort.  Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 211 (1985).

Although it appears to be simply a jurisdictional provision, a substantial body of case law has developed surrounding the preemptive force of Section 301 over state or territorial laws that impact the interpretation and application of collective bargaining agreements.  Stafford v. Hess Oil V.I. Corp., 133 F. Supp. 2d 384, 387 (D.V.I. App. 2001).  Section 301 "has been interpreted as authorizing federal courts to fashion a body of common law for the enforcement of collective bargaining agreements."  Antol v. Esposto, 100 F.3d 1111, 1115 (3d Cir. 1997) (citing Textile Workers Union v. Lincoln Mills, 353 U.S. 448, 456 (1957)).  "Section 301 preemption 'ensures that federal law will be the basis for interpreting collective bargaining agreements.'"  Id.

---

[3] Section 301 of the LMRA states, "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.  29 U.S.C. 185(a) (1998).

(quoting Lingle v. Norge, Div. of Magic Chef, Inc., 486 U.S. 399, 411 (1988)).  "An underlying

reason for the development of federal law in this area is the need for uniform interpretation of

contract terms to aid both the negotiation and the administration of collective bargaining

agreements."  Id. (citing Local 174, Teamsters v. Lucas Flour Co., 369 U.S. 95, 103-04 (1962)).

"The pre-emption rule has been applied to assure that the purposes animating § 301 will [not] be

frustrated . . . by state laws purporting to determine 'questions relating to what the parties to a

labor agreement agreed, and what legal consequences were intended to flow from breaches of

that agreement.'"  Livadas v. Bradshaw, 512 U.S. 107, 122-23 (1994) (quoting Allis-Chalmers

Corp., 471 U.S. at 211).

         For there to be Section 301 preemption, the plaintiff must plead an action that requires

interpretation of the collective bargaining agreement.  Henderson, 998 F. Supp. at 537; see Allis-

Chalmers Corp., 471 U.S. at 211[4]; Caterpillar, Inc. v. Williams, 482 U.S. 386, 398 (1987)  "Not

every dispute concerning employment, or tangentially involving a provision of the collective

bargaining agreement, is preempted by Section 301 or other provisions of federal labor law."  Id.

However, when resolution of a state law claim is "substantially dependent upon analysis of the

terms of an agreement made between the parties in a labor contract, that claim must either be

treated as a § 301 claim or dismissed as pre-empted by federal labor-contract law."  Id.;

Henderson, 998 F. Supp. at 537; see also Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S.

399, 399-400 (1988) ("if the resolution of a state law claim depends upon the meaning of a

---

[4] The Allis-Chalmers Court held that a state-law claim is preempted "when resolution of a state-law claim
is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor
contract."  Allis-Chalmers 471 U.S. at 220 (finding that an employee's state-law tort claim against his
employer for bad-faith processing of his disability-benefits insurance claim was preempted by section 301
because "the duties imposed and rights established through the state tort . . . derive from the rights and
obligations established by the [collective bargaining agreement]" and necessarily involve interpretation
thereof); see Stafford, 133 F. Supp. 2d at 387.  Section 301 preemption has been expanded to apply to tort
as well as contract claims.  See Allis-Chalmers, 471 U.S. at 211.

collective bargaining agreement, the application of state law . . . is pre-empted and federal labor law principles necessarily uniform throughout the Nation must be employed to resolve the dispute").

The Court must turn to the particular claims raised in Plaintiff's Complaint to determine whether resolution of these claims necessitates interpretation of the CBA and whether such claims require dismissal.

### A.  **Breach of Contract**

The CBA between Plaintiff and Defendant was a contract which governed the terms of Plaintiff's employment and set forth the intent of the parties.  <u>See</u> CBA § 1.2.[5]  In order to resolve Plaintiff's breach of contract claim, interpretation of the CBA is clearly required.  The specific terms relating to discharge in the CBA in effect at the time of Plaintiff's termination will have to be interpreted because the CBA gave Defendant certain rights and obligations with respect to Plaintiff's discharge.  Specifically, the Court would have to construe Article 3, § 3.3, which states, in part, that "the Company may, at its sole discretion, transfer, disqualify, discipline or discharge" a probationary employee.  Additionally, the Court would have to interpret the scope of Article 4 regarding management rights as well as Article 24 regarding the grievance procedure to assess Plaintiff's argument that she was discharged in violation of her employment contract.[6]  <u>See</u> <u>Henderson</u>, 998 F. Supp. at 540 ("[I]n order to resolve [plaintiff's] claims

---

[5] Section 1.2 of the CBA states that its provisions "constitute the sole procedure for the processing and settlement of any claim by an employee of the Union of a violation by [Defendant] of this Agreement."

[6] Section 4.1 of the CBA contains grounds for discharge and provides that "any such discharge or disciplinary action shall be subject to the Grievance Procedure clause of the Agreement."  <u>See</u> CBA § 4.1. This procedure is outlined in Article 24, which sets forth a comprehensive and exclusive procedure for

regarding the circumstances of his discharge, the collective bargaining agreements, which

contain clauses specifically relating to discharge, will have to be interpreted").  Therefore, the

Court finds that Plaintiff's breach of contract claim is preempted by Section 301 of the LMRA.


### B.   Breach of Implied Covenant of Good Faith and Fair Dealing

Under the "substantially dependent" test outlined in Allis-Chalmers, 471 U.S. at 213,

state-law rights and obligations that do not exist independently of collective bargaining

agreements are preempted by those agreements.  See Stafford, 133 F. Supp. 2d at 387; see also

Caterpillar, Inc., 482 U.S. at 394 ("Section 301 governs claims founded directly on rights created

by collective bargaining agreements, and also claims 'substantially dependent on analysis of a

collective bargaining agreement") (citation omitted).  Thus, the Court's analysis must focus on

whether the implied covenant of good faith and fair dealing "confers nonnegotiable state-law

rights on employers or employees independent of any right established by contract, or, instead,

whether evaluation of [Plaintiff's] . . . claim is inextricably intertwined with consideration of the

terms of the labor contract."  Allis-Chalmers, 471 U.S. at 213.  In conducting this analysis, the

Court bears in mind the limitations of the preemption principle set forth by the United States

Supreme Court and reiterated by the Third Circuit Court of Appeals.  Section 301

> cannot be read broadly to pre-empt nonnegotiable rights conferred on individual
> employees as a matter of state law . . . it is the legal character of a claim, as
> "independent" of rights under the collective-bargaining agreement, . . . that decides
> whether a state cause of action may go forward. Finally . . . when the meaning of
> contract terms is not the subject of dispute, the bare fact that a collective-bargaining
> agreement will be consulted in the course of state-law litigation plainly does not
> require the claim to be extinguished.

---

resolving grievances related to discharge and in which an arbitrator's award is "final and binding on the
parties."  Id.

Voilas v. General Motors Corp., 170 F.3d 367, 375 (3d Cir. 1999) (quoting Livadas, 512 U.S. at 122-24) (internal quotations omitted); see Stafford, 133 F. Supp. 2d at 387.

The covenant of good faith and fair dealing in employment matters serves to protect the integrity of all of the promises made by the parties to the agreement setting forth the terms and conditions of employment. See Mendez v. Coastal Systems Development, Inc., 2008 WL 2149373 at *4 (D.V.I. 2008).  A breach of such a covenant therefore constitutes a breach of an obligation created by the contract rather than breach of an obligation arising independently from the contract.  Id.  Several courts have succinctly held that "[w]here a duty of good faith arises, it arises under the law of contracts, and there is no need to create a tort for breach of the duty of good faith. . . ." Jo-Ann's Launder Center, 854 F.Supp. 387, 390 (D.V.I. 1994); see Northview Motors, Inc. v. Chrysler Motors Corporation, 227 F.3d 78, 91 (3d Cir. 2000); Mendez, 2008 WL 2149373 at *9; see also Bagwell v. Fafard, Inc., 2007 U.S. Dist. LEXIS 50362 at *22-23 (D.S.C., July 11, 2007) (holding that claim for breach of implied covenant of good faith and fair dealing is only applicable insofar as a contract is held to exist).

Defendant, at most, had a contractual duty to act in good faith and that duty did not exist independently of the CBA between the parties.  See Mendez, 2008 WL 2149373 at *9 (D.V.I. 2008) (finding that breach of covenant of good faith and fair dealing constitutes breach of an obligation created by underlying contract); see also Guerrero v. Hovensa, 2007 WL 4468668 at *3 (3d Cir. Dec. 21, 2007) ("Whether there is an implied *contractual* duty will necessarily require an analysis of the terms of the CBA to determine if the contract as a whole obliges the employer to act in good faith and fair dealing"); Allis-Chalmers Corp., 471 U.S. at 218 (observing that liability for breach of a contractual duty of good faith "inevitably will involve contract interpretation").  Accordingly, the Court finds that Defendant's duty of good faith and

10

fair dealing is inextricably intertwined with the CBA and, therefore, Plaintiff's claim is preempted by Section 301 of the LMRA.  See Henderson, 998 F. Supp. at 540; see also Chmiel v. Beverly Wilshire Hotel, 873 F.2d 1283 (9th Cir. 1989) (holding breach of covenant of good faith and fair dealing preempted by § 301).


### C.  Infliction of Emotional Distress

In Count III of her Complaint, Plaintiff alleges that Defendant intentionally inflicted emotional distress upon her by discharging her without good cause.[7]  Defendant insists that it did not engage in conduct that can serve as the predicate for Plaintiff's claim for intentional infliction of emotional distress.  See Def.'s Reply Brief at 5 (Docket No. 8).  To succeed on her claim for intentional infliction of emotional distress, Plaintiff must show that Defendant's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  See Berry v. Jacobs IMC, L.L.C., 99 Fed. Appx. 405, 410 (3d Cir. 2004) (quoting Restatement (Second) of Torts § 46 cmt. d (1965)); Claytor v. Chenay Bay Beach Resort, 79 F. Supp. 2d 577, 583 (D.V.I. 2000); Alvarez v. Pueblo Int'l, Inc., 24 V.I. 141, 147 (Terr. Ct. 1989); Cox v. Keystone Carbon Co., 861 F.2d 390, 395 (3d Cir. 1988).  Defendant argues that Plaintiff has offered no evidence that Defendant's actions in this case approached the required level of severity.  See Def.'s Reply Brief at 5

---

[7] Plaintiff also brings a claim for negligent infliction of emotional distress against Defendant in Count IV of her Complaint.  To succeed on her claim for negligent infliction of emotional distress, Plaintiff must show that she suffered physical injury as a result of Defendant's conduct and that Defendant should have realized its conduct carried an unreasonable risk of causing such injury.  See Berry, 99 Fed. Appx. At 410 (citing Restatement (Second) of Torts § 313 (1965)); Anderson v. Gov't of the Virgin Islands, 180 F.R.D. 284, 287 (D.V.I. 1998).  Plaintiff states that she suffered "mental anguish and pain and suffering."  See Complaint ¶ 62.

Defendant's allegations as to the merits of Plaintiff's intentional infliction of emotional distress claim are not sufficient to dismiss such claim in the instant action.  Because a Rule 12(b)(6) motion results in a determination on the merits at an early stage of Plaintiff's case, Plaintiff is afforded the safeguard of having all its allegations taken as true and all inferences favorable to Plaintiff will be drawn.  Boyle v. Governor's Veterans Outreach & Assistance Center, 925 F.2d 71, 74 (3d Cir. Pa. 1991); see Mortensen v. First Federal Savings and Loan Ass., 549 F.2d 884, 891 (3rd Cir. 1977).  The question of whether Defendant's conduct rose to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress needs to await further factual development and cannot be resolved at such an early stage.  Hence, the Court will not prematurely determine whether Plaintiff has established that the conduct complained of could reasonably be regarded as so extreme and outrageous as to permit recovery.

Defendant's second argument for dismissal of Plaintiff's emotional distress claims insists that such claims are inextricably intertwined with Plaintiff's core allegation that Defendant wrongfully terminated her employment.  See Def.'s Reply Brief at 3.  Defendant argues that Plaintiff's intentional and negligent infliction of emotional distress claims cannot be resolved without analyzing the provisions of Plaintiff's CBA to determine (1) whether Defendant violated its terms when it discharged her and (2) whether the terms of the CBA modified or altered her rights under the law in the first place.  Id.

An emotional distress claim is not preempted when it can be resolved without examination or interpretation of the collective bargaining agreement.  Tellez v. Pacific Gas & Elec. Co., 817 F.2d 536, 539 (9th Cir. 1987); see also Furillo v. Dana Corp., Parish Div., 866 F. Supp. 842, 850 (E.D. Pa. 1994) (finding that state law claims are not preempted if such claims

12

encompass actions outside scope of collective bargaining agreement).  "A claim is not preempted if it does not threaten significantly the collective bargaining process and if it furthers a state interest in protecting the public that transcends the employment relationship."  Cook v. Lindsay Olive Growers, 911 F.2d 233, 237 (9th Cir. Cal. 1990) (citing Chmiel v. Beverly Wilshire Hotel Co., 873 F.2d 1283, 1285 (9th Cir. 1989)); see Stafford, 133 F. Supp. 2d at 389.  The question before the Court is whether resolution of Plaintiff's emotional distress claims are dependent upon an interpretation of the CBA.  See Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 261 (1994).

Plaintiff's emotional distress claims arise directly out of her discharge in that they directly challenge Defendant's conduct at the time it discharged her.[8]  Thus, an analysis of Plaintiff's tort claims for intentional and negligent infliction of emotional distress would require that the Court analyze and resolve the question of whether Defendant properly discharged Plaintiff.  Henderson, 998 F. Supp. at 540.  The CBA defines both Defendant's authority and Plaintiff's rights with regard to the conduct complained of.  In order to assess whether Defendant intentionally or negligently inflicted emotional distress on Plaintiff, the Court would have to interpret the CBA to determine the scope of Defendant's authority.  See id.

Because disposition of these emotional distress claims is not possible without analyzing and interpreting the terms of the CBA pertaining to just discharge and to grievance procedures, the Court finds that said claims are not independent of the CBA.  Under the Allis-Chalmers test, these allegations are "inextricably intertwined with consideration of the terms of the labor contract."  See Allis-Chalmers, 471 U.S. at 213; Caterpillar, 482 U.S. at 394; see also Cini v. AMTRAK, 2001 U.S. Dist. LEXIS 11170 at *8-9 (E.D. Pa. June 18, 2001) (finding that emotional distress claim would require court to analyze and resolve question of whether

---

[8] Plaintiff's emotional distress claims are grounded on the assertion that Defendant terminated her for absences which should have been authorized.

defendants properly handled termination of plaintiff, which would necessarily involve interpretation of terms of collective bargaining agreement); Guerrero, 2007 WL 4468668 at *3 (holding that plaintiff's emotional distress claim required interpretation of collective bargaining agreement and was preempted by federal law).  Accordingly, Plaintiff's claims for intentional and negligent infliction of emotional distress are preempted by Section 301 of the LMRA.

### D.  First Amendment Right to Freedom of Speech and Sixth Amendment Right to Jury Trial

Plaintiff brings a claim for violation of her First Amendment right to freedom of speech in Count V and brings a claim for violation of her Sixth Amendment right to a jury trial in Count VI.  The First and Sixth Amendments in the employment context apply to "state actions" that effect public employees.  See Dixon v. Coburg Dairy, Inc., 369 F.3d 811, 817 (4th Cir. 2004); see also Fogarty v. Boles, 121 F.3d 886, 890 (3d Cir. 1997) ("It must be remembered that the First Amendment applies only to public employees"); Fraser v. Nationwide Mut. Ins. Co., 135 F. Supp. 2d 623, 643 (E.D. Pa. 2001) ("Constitutional protection of free speech is not generally applicable to private employers").  In this case, Defendant is a private employer rather than a state actor and its actions as described in Plaintiff's Complaint do not constitute state action under the law.  Therefore, Plaintiff's claims for violation of her First Amendment and Sixth Amendment rights are dismissed.

**E.   Wrongful Discharge**

Although Plaintiff does not have standing to bring a claim under the Virgin Islands

Wrongful Discharge Act[9], she makes a claim for wrongful discharge in violation of public policy

in Count VII of her Complaint.  Plaintiff argues that it is contrary to public policy for employees

to be terminated from their jobs for facing allegations of criminal conduct.  See Pl.'s Opp. to

Def.'s Mot. to Dismiss at 3 (Docket No. 7).  Additionally, Plaintiff insists that claims for

violations of public policy do not require interpretation of the subject CBA and therefore are not

preempted by Section 301 of the LMRA.  Id. at 4.

According to Plaintiff, her claim based on public policy is valid in this case because "no

applicable statutory scheme exists to address [her] claims that she was wrongfully discharged for

appearing to defend herself in federal court against criminal charges."  See Pl.'s Opp. to Def.'s

Mot. to Dismiss at 2-3.  Plaintiff asserts that, in Robinson v. HOVIC, 1982 U.S. Dist. LEXIS

18353 (D.V.I. 1982) and Moore v. A.H. Riise Gift Shops, 659 F. Supp. 1417, 1423 (D.V.I.

1987), a cause of action for wrongful discharge in violation of public policy was permitted to go

forward.  However, Robinson and Moore were both decided prior to the enactment of the Virgin

Islands Wrongful Discharge Act in 1986.  With the enactment of the Wrongful Discharge Act,

"the validity of Robinson and Moore has been rendered moot."  Bell v. Chase Manhattan Bank,

40 F. Supp. 2d 307, 309 n.2 (D.V.I. 1999); see V.I. Code Ann. tit. 24, § 76(a).

---

[9] The Virgin Islands Wrongful Discharge Act allows an employee to sue for wrongful discharge if he or she has been discharged for any reason other than the nine grounds set forth in § 76(a).  24 V.I.C. § 76(a). Section 76(a), however, provides that these nine grounds for dismissal may be modified by union contract.  To discern whether the Wrongful Discharge Act's statutory grounds have been modified requires that the Court interpret the relevant provisions of the CBA.  See Guerrero, 2007 WL 4468668 at *3; Lingle, 486 U.S. at 413.  The Court finds that the remedies afforded under the Wrongful Discharge Act are not available to Plaintiff because, under its express terms, the CBA constitutes "the sole procedure for the processing and settlement of any claim by an employee of the Union of a violation by [Defendant] of this Agreement."  See CBA at 1.2.  Furthermore, Plaintiff was employed by Defendant for less than 180 days, which is the statutory prerequisite for an employee to bring a claim under the Wrongful Discharge Act.  24 V.I. Code Ann. § 62; see Pl.'s Opp. to Def.'s Mot. to Dismiss at 2.

"The public policy against wrongful termination is already protected by a comprehensive legislative scheme in the Virgin Islands by way of the Wrongful Discharge Act." <u>Mendez</u>, 2008 WL 2149373 at \*5.  Allowing a cause of action for wrongful discharge in violation of public policy, as Plaintiff suggests is appropriate in this case, would essentially amount to legislative decisionmaking.  Such is not the role of the judiciary.  <u>See</u> Foley, 765 P.2d at 397 (finding that extension of bad faith tort claims to the employment context "is better suited for legislative decisionmaking"). Not only would the legislative preference for an appropriate solution be circumvented, serious problems would be posed as to the extent of the remedy to be provided.

The Court is not willing to interfere with the remedial scheme already in place by creating a new common law action based on public policy.  <u>Mendez</u>, 2008 WL 2149373 at \*5; <u>see also</u> <u>Melley v. Gillette Corp.</u>, 19 Mass. App. Ct. 511, 511-512 (Mass. App. Ct. 1985) ("[A] finding that certain conduct contravenes public policy does not, in itself, warrant the creation of a new common law remedy for wrongful dismissal by an employer").  Therefore, Plaintiff's claim for wrongful discharge in violation of public policy is dismissed.


## IV.  PREEMPTION BY SECTION 301 OF THE LMRA

Plaintiff's claims for (1) breach of contract, (2) breach of the covenant of good faith and fair dealing, (3) intentional infliction of emotional distress and (4) negligent infliction of emotional distress are preempted by Section 301 of the LMRA.  Hence, these claims must either be dismissed or be treated as Section 301 claims and analyzed by application of federal common law.  <u>Henderson</u>, 998 F. Supp. at 541.  An employee protected by a collective bargaining agreement may sue his or her employer under Section 301 of the LMRA only after he or she has pursued his or her available contractual grievance and arbitration remedies and has established

16

that his or her right of fair representation has been violated by the union.  See DelCostello v. Int'l

Brhd. of Teamsters, 462 U.S. 151, 163-64 (1983); Ames v. Westinghouse Elec. Corp. 864 F.2d

289, 292 (3d Cir. 1988); Koshatka v. Philadelphia Newspapers, Inc.,762 F.2d 329, 334 (3d Cir.

1985); see also United Parcel Service v. Mitchell, 451 U.S. 56, 66-67 (1981) ("To prevail against

either the company or the Union, … [plaintiff] must not only show that their discharge was

contrary to the contract but must also carry the burden of demonstrating a breach of duty by the

Union"); Harrigan v. Caneel Bay, Inc., 745 F. Supp. 1122, 1127 (D.V.I. 1990) ("An individual

employee may bring suit against his or her employer for breach of a collective bargaining

agreement; however, an employee is required to attempt to exhaust any grievance or arbitration

remedies provided in the collective bargaining agreement before bringing suit in federal court").

      Plaintiff attempted to comply with the grievance procedure outlined in the CBA when she

filed a complaint with the Union.  In a response letter dated April 27, 2006, Gerard Jackson,

President of the Union, notified Plaintiff that the grievance procedures of its contract did not

apply to her as a probationary employee and advised Plaintiff to pursue her claim through the

courts of the Virgin Islands.  See Complaint ¶¶ 48-50.  Consequently, there was nothing more

Plaintiff could do to pursue her claims under the grievance procedure outlined in the CBA and

the Court finds that Plaintiff made a legitimate attempt to exhaust any contractual grievance

remedies available to her.  Rivera v. Government of Virgin Islands, 635 F. Supp. 795, 798-99

(D.V.I. 1986); see Vaca v. Sipes, 386 U.S. 171, 185-86 (1967); Smith v. Pittsburgh Gage and

Supply Company, 464 F.2d 870, 875 (3d Cir. 1972).

      However, at no point has Plaintiff alleged that the Union breached its duty to fairly

represent her.  The Court finds that, even if Plaintiff had asserted that her contractual claims

should be treated as Section 301 claims, such claims must be dismissed for her failure to

17

establish that her right of fair representation has been violated by the Union.  Guerrero v.

Hovensa, 2007 WL 4468668 at *3; see Henderson, 998 F. Supp. at 541-42; Allard v. Hess Oil

V.I. Corp., 43 F. Supp. 2d 551, 555 (D.V.I. 1999); see also Breininger v. Sheet Metal Wkrs. Int'l

Ass'n Local Union No. 6, 493 U.S. 67, 82 (1989) (instructing that an employee's § 301 claim

against his employer requires demonstrating that the union breached its duty of fair

representation); Vadino v. A. Valey Eng'rs, 903 F.2d 253, 261 (3d Cir.1990) (observing that an

"unfair representation claim is the necessary 'condition precedent' to the employee's suit" under

§ 301 against his employer); Williams v. Sea-Land Corp., 844 F.2d 17, 20-21 (1st Cir. 1988)

(barring employee complaint because he did not establish union's breach of duty of fair

representation in failing to pursue his grievance); Vera v. Saks & Co., 424 F. Supp. 2d 694, 705

(S.D.N.Y. 2006) ("In order to be excused from the exhaustion requirement based on a union's

breach of the duty of fair representation, the employee must adequately plead and eventually

prove that breach").

## V.  CONCLUSION

        Resolution of Plaintiff's breach of contract claim in Count I, breach of the implied

covenant of good faith and fair dealing claim in Count II, intentional infliction of emotional

distress claim in Count III and negligent infliction of emotional distress claim in Count IV

requires interpretation of the CBA.  Therefore, these claims are preempted by Section 301 of the

LMRA.  See 29 U.S.C. § 185.  Because Plaintiff has not met the prerequisites to bring suit in

Federal Court under Section 301 of the LMRA, her claims in Count I, Count II, Count III and

Count IV are dismissed as preempted by federal labor-contract law.  Id.  Because Defendant is a

private employer rather than a state actor, Plaintiff's claims for violation of her First Amendment

18

and Sixth Amendment rights in Count V and Count VI are dismissed.  Because the Court refuses

to recognize a cause of action for wrongful discharge in violation of public policy, Count VII of

Plaintiff's Complaint is dismissed.  All that remains in this case is Count VIII for punitive

damages, which is not a distinct cause of action and was improperly plead as a separate count.

Hence, Plaintiff's Complaint is dismissed in its entirety and judgment is entered in favor of

Defendant.


**ENTERED this 2nd day of October, 2008.**


_____/s/_____

**HONORABLE RAYMOND L. FINCH**
**U.S. SENIOR DISTRICT JUDGE**